IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FIDELITY NATIONAL | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| | ) | NO. 2:07CV860-mef |
| v. | ) | |
| | ) | |
| | ) | |
| COMOLETHA JAMISON-MEANS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW,** FIDELITY NATIONAL INSURANCE COMPANY

(hereinafter "FIDELITY"), Plaintiff in the above-captioned action, and files

this Complaint for Declaratory Judgment, showing the court the following:

1.

Plaintiff Fidelity National Insurance Company is a foreign corporation

licensed to do business in the State of Alabama with its principal place of

business located in Jacksonville, Florida.

2.

Defendant Comoletha Jamison-Means is a citizen of Alabama and

resides at 3226 Virginia Loop Drive, (Montgomery County) Alabama 36116 where she may be served with this Complaint.

3.

Defendant Comoletha Jamison-Means is subject to the jurisdiction of this Court which lies within the Middle District of Alabama, Northern Division pursuant to *28 U.S.C.A. § 81 (b)(1)*

4.

This Honorable Court has original jurisdiction under *28 U.S.C. § 1332*, and is one which may brought in this Court by Plaintiff in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, but inclusive of bad faith penalties and attorneys fees sought against Plaintiff.

5.

This is an Action brought pursuant to the Declaratory Judgment Acts as codified under 28 USC  *§ 2201*, et. seq.

6.

On or about January 25, 2006, there was created a putative contract Plaintiff Fidelity and Defendant Jamison-Means.  As part of that putative contract, Plaintiff issued its Homeowners Policy Number CP6-1302

-2-

(Hereinafter referred to as "The Policy").

7.

The policy, having been renewed on January 25, 2007 with effective dates of coverage from January 25, 2007 until January 25, 2008, putatively afforded homeowners insurance covering homeowner's losses for the insured residence located at 2265 E. Aberdeen Drive, Montgomery, (Montgomery County) Alabama 36116, in accordance with the terms, limits, definitions, exclusions and conditions of The Policy.

8.

A true, correct and genuine specimen of said policy bearing Policy Number CP6-1302, which was issued to Comoletha Jamison-Means is attached hereto as Exhibit "A" and expressly incorporated herein by reference.

9.

Plaintiff shows that on or about February 19, 2007 the insured alleges that a person or persons unknown unlawfully gained entrance to the putatively insured residence located at 2265 E. Aberdeen Drive, Montgomery, (Montgomery County) Alabama 36116.

10.

Plaintiff shows that the Defendant insured alleges that person or persons

unknown who unlawfully gained access to the putatively insured premises allegedly stole property belonging to Defendant who in turn submitted a claim to Plaintiff totaling $41,818.63. A copy of the Proof of Loss submitted by Defendant Means to Plaintiff is attached hereto as EXHIBIT "B".

## COUNT I

INSURED'S FAILURE TO COOPERATE WITH PLAINTIFF

11.

Page 11 of the Fidelity National Insurance policy issued to Defendant provides the following:

**SECTION I - CONDITIONS:**

b.      Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us.  These duties must be performed either by you, an "Insured" seeking coverage, or a representative of either:

5.      Cooperate with us in the investigation of the claim;

6.      Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and

-4-

amount of loss.  Attach all bills, receipts and related documents that justify the figures in the inventory.

12.

In the present matter, Defendant Insured failed to cooperate with Plaintiff after Fidelity National requested that Defendant provide truthful answers to Plaintiff regarding facts and circumstances surrounding the loss.

13.

Prior to the start of an Examination Under Oath taken of Defendant, Counsel for Fidelity National reminded Defendant of her duty to answer the questions truthfully and completely and that any false statement, intentional omissions or intentional misrepresentations may constitute an independent basis of denial of the claims presented to Fidelity, to which Defendant testified that she understood.

14.

As a result of the Putative Insured's failure to cooperate, as required by the terms and conditions of the policy, Plaintiff Fidelity seeks a Declaration from this Honorable Court that it be permitted to deny this claim.

**COUNT II**

-5-

INSURED'S FAILURE TO PROVIDE TRUTHFUL ANSWERS

DURING INVESTIGATION OF CLAIM

15.

Page 13 of the Fidelity Insurance policy issued to Plaintiff provides the following:

SECTION I - CONDITIONS

Q.    Concealment Or Fraud

We provide coverage to no "Insureds" under this policy if, whether before or after a loss, an "insured" has:

1.    Intentionally conceal or misrepresented any material fact or circumstance;

2.    Engaged in fraudulent conduct; or

3.    Made false statements

Relating to this insurance.

16.

In the present matter, Defendant Insured provided false and contradictory information under oath to Plaintiff regarding the facts and circumstances surrounding this loss in violation of the Concealment Or Fraud exclusion contained in the policy issued by Plaintiff to Defendant.

-6-

17.

Defendant provided information regarding the purchase of items which the insured contends were removed from her premises on or about February 19, 2007, which the Plaintiff has determined were not in fact purchased as Defendant alleges and/or were not located in the premises at the time of the loss.

18.

Plaintiff compared the alleged items which Defendant contends were stolen on the above-stated date which Defendant listed on an Inventory submitted to Plaintiff, which is attached hereto as EXHIBIT "E", with the Property which Defendant listed as property in her possession at the time she filed for Bankruptcy on January 2, 2007, which is attached hereto as EXHIBIT "D" and found significant discrepancies in the alleged property which Defendant stated under oath was not in her possession immediately prior to the theft and that property which Defendant told Plaintiff was taken in the purported theft of February 19, 2007.

19.

Plaintiff also reviewed monthly checking statements which Defendant provided to Plaintiff which showed that Defendant did not have the financial

resources to make purchases of personal property which Defendant alleged had been stolen on the date in question as indicated in the Inventory and Proof of Loss which Defendant submitted to Plaintiff.

20.

As a result of the false information which the Putative Insured provided to Plaintiff Fidelity in violation of the conditions and exclusions contained in the policy under the Concealment Or Fraud exclusion,  Plaintiff Fidelity seeks a Declaration from this Honorable Court that it be permitted to deny this claim.

## COUNT III

### DEFENDANT'S CLAIM BARRED BY DOCTRINE OF JUDICIAL ESTOPPEL

21.

The doctrine of Judicial Estoppel precludes a party from assuming a position in a legal proceeding inconsistent with a position previously asserted. *Luna v. Dominion Bank of Middle Tennessee, Inc.,* 631 So.2d 917, 918 (Ala. 1993). Judicial estoppel serves to protect the integrity of judicial proceedings. *Consolidated Stores, Inc. v. Gargis,* 686 So.2d 268, 274 (Ala. Civ. App. 1996).

22.

Plaintiff shows that the insured Defendant submitted a claim to Plaintiff totaling $41,818.63 for property allegedly stolen from the insured residence, which did not include property which was left behind by alleged thieves who gained entry into Defendant's premises. A Copy of the Proof of Loss submitted by Defendant Means to Plaintiff for property allegedly stolen from Defendant's putatively insured premises is attached hereto as EXHIBIT "B".

23.

Plaintiff shows that on January 2, 2007, one month prior to the alleged theft which forms the basis of this litigation, Defendant insured filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama, Case No. 07-30002.

24.

At the time that Defendant filed for Bankruptcy on January 2, 2007, she attached contemporaneously therein a Schedule B which identified the amount of property in Defendant's possession, a copy of which is attached hereto as EXHIBIT "D".

25.

Plaintiff shows that in Schedule B from that filing, the insured stated under oath and "under penalty of perjury" that entire value of her household goods in the putatively insured residence approximately thirty days prior to the loss was only $2,300, while in the Inventory and Proof of Loss which Defendant submitted to Plaintiff Fidelity, Defendant claimed in excess of $41,818 of property was stolen from the putatively insured residence, not including all of the furniture and other household goods left in the house after the alleged theft.

26.

Plaintiff shows that the Defendant has assumed a position the claim submitted to Plaintiff for the theft of personal property which is inconsistent with a position previously asserted under oath in the Bankruptcy Court for the Middle District of Alabama, which is now barred by the doctrine of Judicial Estoppel.

27.

Plaintiff Fidelity seeks a Declaration from this Honorable Court that it be permitted to void the policy and deny coverage premised on the Doctrine

of Judicial Estoppel.

## COUNT IV

## DEFENDANT'S CLAIM BARRED BY MISREPRESENTATIONS IN THE PROOF OF LOSS

28.

Alabama Code **§ 27-14-28** governs the manner by which insurance companies may void insurance policies where there is a Misrepresentation in the Proof of Loss. Alabama Code **§ 27-14-28** provides:

> *No misrepresentation in any Proof of Loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive as to a matter material to the insured's rights under the policy.*

29.

Plaintiff shows that the putatively insured Defendant submitted a claim to Plaintiff totaling $41,818.63 for property allegedly stolen from the insured residence, which did not include property which was left behind by alleged thieves who gained entry into Defendant's premises. A Copy of the Proof of Loss submitted by Defendant Means to Plaintiff for property allegedly stolen

-11-

from Defendant's putatively insured premises is attached hereto as EXHIBIT "B".

30.

Plaintiff shows that on January 2, 2007, one month prior to the alleged theft which forms the basis of this litigation, Defendant insured filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Middle District of Alabama, Case No. 07-30002.

31.

At the time that Defendant filed for Bankruptcy on January 2, 2007, she attached contemporaneously therein Schedule B which identified the amount of property in Defendant's possession, a copy of which is attached hereto as EXHIBIT "D".

32.

Plaintiff shows that in Schedule B from that Bankruptcy filing, the insured stated under oath and "under penalty of perjury" that entire value of her household goods in the putatively insured residence approximately thirty days prior to the loss was only $2,300, while in the Inventory and Proof of Loss which Defendant submitted to Plaintiff Fidelity, Defendant claimed in excess

-12-

of $41,818 of property was stolen from the putatively insured residence, not including all of the furniture and other household goods left in the house after the alleged theft.

33.

Plaintiff shows that Defendant made misrepresentations in the Proof of Loss submitted to Plaintiff which now serves to defeat or void the policy issued by Plaintiff inasmuch as said misrepresentations were made with actual intent to deceive as to a matter material to the insured's rights under the policy as statutorily prohibited by A.C.A. *§ 27-14-28.*

34.

Plaintiff shows that a conflict has arisen as to whether Defendant: (1) failed to comply with that portion of the Policy referenced in requiring that Defendant cooperate with Plaintiff in the investigation of the claim; (2) failed to provide truthful information to Plaintiff during its investigation into the loss; (3) is barred by Judicial Estoppel in that Defendant assumed a position in a legal proceeding inconsistent with a position previously asserted; and/or (4) provided material misrepresentations to Plaintiff with the actual intent to deceive Plaintiff as to a matter material to the insured's rights under the policy.

-13-

35.

Plaintiff contends that it has no obligation to settle any claim or pay any Judgment which may ultimately be rendered against Plaintiff arising out of the alleged loss on or about February 19, 2007 as a result of the policy provisions referenced above.

36.

A substantial question is presented based upon the information supplied to the Plaintiff and on the belief of the Plaintiff as to whether coverage for the claim is afforded under the subject policy of insurance.

37.

Plaintiff shows that an actual justiciable controversy exists between the parties, and that the question of whether Plaintiff has any obligation to provide coverage to Defendant arising out of the alleged loss of February 19, 2007, is in dispute.

38.

As a result of this controversy, Plaintiff is in a position of uncertainty and insecurity.

-14-

39.

By reason of the premises herein, Plaintiff has no adequate remedy at law and will suffer immediate and irreparable harm until a final determination of the issues raised in this action for Declaratory Judgment can be made.

WHEREFORE, Plaintiff prays that the court adjudge:

(A)     Plaintiff is not obligated provide coverage for any claim presented, or resulting from any lawsuit which may result from the alleged loss on or about February 19, 2007;

(B)     Plaintiff is not obligated to pay on behalf of any third parties any sums to which Defendant may ultimately be obligated to pay as damages or benefits arising in and out of the alleged loss on or about February 19, 2007;

(C)     Fidelity National Insurance Policy CP6-1302 affords no coverage to Defendant arising out of the alleged loss on or about February 19, 2007;

(D)     That Defendant failed to provide truthful information to the Plaintiff in violation of the Cooperation Clause of the policy;

(E) That Defendant failed to provide truthful answers to the Plaintiff in violation of the Concealment or Fraud exclusion of the putative policy of insurance;

(F) That Defendant's claim is barred by the Doctrine of Judicial Estoppel in that Defendant assumed a position in a legal proceeding inconsistent with a position previously asserted;

(G) That Defendant's claim is barred by A.C.A. **§ 27-14-28** in that Defendant made misrepresentations in the Proof of Loss submitted to Plaintiff which now serves to defeat or void the policy issued by Plaintiff inasmuch as said misrepresentations were made with actual intent to deceive as to a matter material to the insured's rights under the policy.

(H) That this court stay, restrain, and enjoin the Defendant herein from pursuing litigation against Plaintiff or from any Third-Party from pursuing litigation against Defendant until a final determination of the Declaratory Judgment

Action can be made; and

(I)     This Court grant such other and further relief as it may

deem just and proper.

This 24th day of September, 2007.

CLAXTON & CLAXTON, LLC

WILLIAM P. CLAXTON
Admission Pro Hac Vice Applicant
Attorney for Plaintiff
Fidelity National Insurance Company

Suite 115
180 Interstate North Parkway, SE
Atlanta, Georgia 30339-2102
770.933.1946
770.933.8455 (Fax)
wclaxton@claxtonclaxtonllc.com

-17-



**National Property & Casualty Insurance Company**

2201 Farnam Street, Suite 200, Omaha, NE 68102

September 10, 2007

This is to certify that the attached policy is a true and exact copy of policy number CP6-1302 issued to Comoleatha Means from the Fidelity National Property and Casualty Insurance Company as it existed on February 17, 2007.



Sandra L. Clemans, Claim Administrative Manager
Fidelity National Property & Casualty
Insurance Company

On September 10, 2007 Sandra L. Clemans appeared before me, known to me personally. By signature and stamp know that this was signed in my presence and that I personally know this to be true and accurate.

GENERAL NOTARY-State of Nebraska
LYNDA LUBELEY
My Comm. Exp. June 5, 2009

Notary Public

FNPAC

# EXHIBIT A

FIDELITY NATIONAL INSURANCE SERVICES
THE ROBINSON BRYANT AGENCY
906 S PERRY ST STE 100
MONTGOMERY AL  36104

## We appreciate your business!

5429

COMOLEATHA MEANS
2265 E. ABERDEEN DR.
MONTGOMERY AL 36116

5429000000000000130207040                    07008


**FIDELITY**
National Property & Casualty Insurance Company

PO BOX 45126
JACKSONVILLE FL 32232-5126

POLICY NUMBER
CP6001302
HOMEOWNERS 3 SPECIAL FORM
Client ID 000000512052

## CONTINUATION OF
## COVERAGE NOTICE

EFFECTIVE DATE   01/25/2007
EXPIRATION DATE 01/25/2008

INSURED

5429COMOLEATHA MEANS
2265 E. ABERDEEN DR.
MONTGOMERY AL 36116

AGENT

THE ROBINSON BRYANT AGENCY
906 S PERRY ST STE 100
MONTGOMERY AL 36104
(888) 356-3665

---

PROPERTY

2265 E. ABERDEEN DR.  MONTGOMERY AL 36116

---

Your policy has been continued with no lapse in coverage.

Thank you for doing business with Fidelity National Property and Casualty Insurance Company.

FOR FURTHER SERVICE, PLEASE CONTACT YOUR AGENT OR CALL OUR CUSTOMER SERVICE
CENTER AT 1-800-849-6140.

INSURED:
COMOLEATHA MEANS
2265 E. ABERDEEN DR.
MONTGOMERY AL 36116

5429000000000001302070u0                    00001   02/08/2007          Y79 000 IND7495
                                                     INSURED            AL



**FIDELITY**

National Property & Casualty Insurance Company

PO BOX 45126
JACKSONVILLE FL 32232-5126
1-800-849-6140

POLICY NUMBER
CP6001302
HOMEOWNERS 3 SPECIAL FORM
Client ID    000000512052

**RENEWAL**

**COVERAGE
DECLARATION**

**EFFECTIVE DATE 01/25/2007
EXPIRATION DATE 01/25/2008**

INSURED

5429COMOLEATHA MEANS
2265 E. ABERDEEN DR.
MONTGOMERY AL 36116

AGENT

THE ROBINSON BRYANT AGENCY
906 S PERRY ST STE 100
MONTGOMERY AL  36104
(888) 356-3665

LOCATION OF RESIDENCE PREMISES    2265 E. ABERDEEN DR.  MONTGOMERY AL 36116
EFFECTIVE TIME IS 12:01 A.M. STANDARD TIME AT YOUR RESIDENCE

**SECTION I
PROPERTY COVERAGES**

| COVERAGE A DWELLING | COVERAGE B OTHER STRUCTURES | COVERAGE C PERSONAL PROPERTY | COVERAGE D LOSS OF USE | DEDUCTIBLE |
|---|---|---|---|---|
| $ 146,000 | $ 14,600 | $ 109,500 | $ 58,400 | $ 500 |
| | | | | HURRICANE 1% |

**SECTION II LIABILITY COVERAGES**

| COVERAGE E - PERSONAL LIABILITY | COVERAGE F - MED PAY TO OTHERS |
|---|---|
| $ 100,000        EACH OCCURRENCE | $ 1,000        EACH PERSON/$25,000 EACH OCCURRENCE |

| | LIMIT OR INCREASE LIMIT | PREMIUM/CREDIT |
|---|---|---|
| COVERAGE A - DWELLING | $146,000 | $903.00 |
| COVERAGE B - OTHER STRUCTURES | $14,600 | |
| COVERAGE C - PERSONAL PROPERTY | $109,500 | |
| COVERAGE D - LOSS OF USE | $58,400 | |
| COV E - PERSONAL LIABILITY | $100,000 | |
| COV F - MED PAY TO OTHERS | $1,000 | |
| HOME ALERT PROTECTION | | $24.00- |
| LOSS SETTLEMENT-PERSONAL PROP | $39.00 | |
| HURRICANE DEDUCTIBLE - PERCENT | | |
| DISCOUNTS: | | |

LOSS SURCHARGE.....$    39.25-

| | | |
|---|---|---|
| | TOTAL POLICY PREMIUM | $ 982.00 |

MORTGAGEE(S):
SEBRING CAPITAL PARTNERS LP

LOAN #

**SEE REVERSE SIDE FOR POLICY FORMS AND ENDORSEMENTS**

| FAMILIES/ APARTMENTS | YEAR OF CONSTR | CONSTR | P/G O/G | TERR | FT HYDRANT | MILES F. DEPT | FIRE DISTRICT |
|---|---|---|---|---|---|---|---|
| 001 | 1977 | MASONRY | 01    ** | 011 | 999 | 4 | |
| I1515H (08-03) | | INSURED | AL | 02/08/2007 | Y79 000 IND7495 | | COPY 1  OF 2 |

5429000000000001302070 40             00001

## AMENDMENT PROVISION

If the Declarations indicates your policy is amended, it will be effective on the date shown, and will provide the indicated insurance. Such amended Declarations replaces all prior Declarations. All other terms, conditions, agreements or limitations of the policy, other than contained on the Declarations shall remain the same.

**VESTING**

**FORMS AND ENDORSEMENTS**

|   |   |   |   |
|---|---|---|---|
|   | HO 00 03 | 10 00 | HOMEOWNERS 3 SPECIAL FORM |
|   | AA 00 06 | 08 03 | TABLE OF CONTENTS |
|   | ANIMAL EXCL |  | IMPORTANT NOTICE - EXCLUSION |
|   | A6120 AL | 10 03 | PRIVACY AND ITS PROTECTION |
|   | A6121 AL | 10 03 | SATELLITE DISH EXCLUSION |
| * | A6122 AL | 10 03 | OCCUPANCY ENDORSEMENT |
|   | A6123 AL | 10 03 | ANIMAL LIABILITY EXCLUSION |
|   | A6125 AL | 10 03 | MORTGAGE CLAUSE |
|   | A6133 AL | 10 03 | LIMIT FOR LOSS - CAMERAS/VIDEO |
|   | A6136 AL | 10 03 | CONTINUOUS OR REPEATED SEEPAGE |
|   | A6138 AL | 10 03 | MOLD, FUNGUS, ROT DAMAGE$10000 |
|   | A6139 AL | 10 03 | SECTION II EARTH MOVEMENT EXCL |
|   | A6140 AL | 10 03 | AMENDATORY ENDORSEMENT |
|   | A6142 AL | 10 03 | PERS PROP REPL COST AMENDATORY |
|   | A6148 AL | 05 04 | HURRICANE PERCENT DEDUCTIBLE |
| * | FNIC DN AL | 01 06 | ALABAMA DISCLOSURE NOTICE |
| * | FN1199 | 05 04 | CHANGE OF NAME ENDORSEMENT |
| * | FN1243 | 02 05 | IMPORTANT NOTICE-COV A LIMIT |
|   | HO 01 01 | 05 01 | SPECIAL PROVISIONS - ALABAMA |
|   | HO 04 16 | 10 00 | PREMISES ALARM/FIRE PROTECTION |
|   | HO 04 20 | 10 00 | SPEC ADDL AMT OF INS COV A |
|   | HO 04 90 | 10 00 | PERS PROP REPLACEMENT COST |
|   | HO 04 95 | 10 00 | WATER BACK UP SUMP DISCHARGE |
|   | HO 04 96 | 10 00 | NO COVERAGE HOME DAY CARE BUS |
|   | HO 05 30 | 10 00 | FUNCTIONAL REPLACEMENT COST |
|   | INSPECT NOTICE | 04 05 | IMPORTANT NOTICE - PROP INSPCT |
| * | PRIVACY | 03 06 | PRIVACY STATEMENT |
|   | ZZ 01 01 | 08 03 | SIGNATURE PAGE |

DATE: _____    COUNTERSIGNED BY _____

I1515H (08-03)



**FIDELITY**
National Property & Casualty Insurance Company

PO BOX 45126
JACKSONVILLE FL 32232-5126
1-800-849-6140

POLICY NUMBER
CP6001302
HOMEOWNERS 3 SPECIAL FORM
Client ID     000000512052

**RENEWAL**

**COVERAGE
DECLARATION**

EFFECTIVE DATE 01/25/2007
EXPIRATION DATE 01/25/2008

INSURED

5429COMOLEATHA MEANS
2265 E. ABERDEEN DR.
MONTGOMERY AL 36116

AGENT

THE ROBINSON BRYANT AGENCY
906 S PERRY ST STE 100
MONTGOMERY AL 36104
(888) 356-3665

LOCATION OF RESIDENCE PREMISES    2265 E. ABERDEEN DR.  MONTGOMERY AL 36116
EFFECTIVE TIME IS 12:01 A.M. STANDARD TIME AT YOUR RESIDENCE

SECTION I
PROPERTY COVERAGES

| COVERAGE A DWELLING $ 146,000 | COVERAGE B OTHER STRUCTURES $ 14,600 | COVERAGE C PERSONAL PROPERTY $ 109,500 | COVERAGE D LOSS OF USE $ 58,400 | DEDUCTIBLE $ 500 HURRICANE 1% |
|---|---|---|---|---|

SECTION II LIABILITY COVERAGES

| COVERAGE E - PERSONAL LIABILITY $ 100,000        EACH OCCURRENCE | COVERAGE F - MED PAY TO OTHERS $ 1,000        EACH PERSON/$25,000 EACH OCCURRENCE |
|---|---|

| | LIMIT OR INCREASE LIMIT | PREMIUM/CREDIT |
|---|---|---|
| BACK-UP OF SEWERS OR DRAINS | | $10.00 |
| MOLD, FUNGUS, ROT DAMAGE$10000 | | $24.00 |
| COV A-50% EXTENDED REPLACEMENT | | |
| POLICY FEE | | $30.00 |

DISCOUNTS:

LOSS SURCHARGE.....$     39.25-

TOTAL POLICY PREMIUM    $ 982.00

MORTGAGEE(S):
SEBRING CAPITAL PARTNERS LP

LOAN #

**SEE REVERSE SIDE FOR POLICY FORMS AND ENDORSEMENTS**

| FAMILIES/ APARTMENTS | YEAR OF CONSTR | CONSTR | P/G O/G | TERR | FT HYDRANT | MILES F. DEPT | FIRE DISTRICT |
|---|---|---|---|---|---|---|---|
| 001 | 1977 | MASONRY | 01      ** | 011 | 999 | 4 | |
| I1515H (08-03) | | INSURED | AL    02/08/2007 | | Y79 000 IND7495 | | COPY 2  OF 2 |

5429000000000130207040        00001

**AMENDMENT PROVISION**

If the Declarations indicates your policy is amended, it will be effective on the date shown, and will provide the indicated insurance. Such amended Declarations replaces all prior Declarations. All other terms, conditions, agreements or limitations of the policy, other than contained on the Declarations shall remain the same.

**VESTING**

**FORMS AND ENDORSEMENTS**

DATE: _____    COUNTERSIGNED BY _____

I1515H (08-03)

# HOMEOWNERS POLICY



**FIDELITY**

National Property & Casualty Insurance Company
3102 Farnam St, Omaha, Nebraska 68131

Fidelity National Property and Casualty Insurance Company
Executive Offices
3102 Farnam Street
Omaha, Nebraska 68131

For fast, personal claim service, call:
1-800-849-6140

In Nebraska, call collect (402) 599-8495



THE HOMEOWNER POLICY FORM, DECLARATIONS PAGE AND ENDORSEMENTS, IF ANY, ISSUED TO

FORM A PART THEREOF, COMPLETES THIS POLICY AND IS A LEGAL CONTRACT BETWEEN THE

POLICY OWNER AND THE COMPANY.

## READ YOUR POLICY CAREFULLY

AA 00 06 08 03

2904000000

**YOUR HOMEOWNERS POLICY**
**TABLE OF CONTENTS**

| | | Beginning on the pages noted below for the applicable policy type | | |
|---|---|---|---|---|
| | | HO0003 | HO0004 | HO0006 |
| | **AGREEMENT** | 1 | 1 | 1 |
| | **DEFINITIONS** | 1 | 1 | 1 |
| | **DEDUCTIBLE** | 2 | 2 | 2 |
| **SECTION I** | **COVERAGES** | 2 | 2 | 2 |
| **YOUR** | Property Coverages | | | |
| **PROPERTY** | Loss of Use | | | |
| | Additional Coverages | | | |
| | Debris Removal | | | |
| | Trees, Shrubs and Plants | | | |
| | Credit Card | | | |
| | Glass or Safety Glazing Material | | | |
| | **PERILS INSURED AGAINST** | 7 | 7 | 7 |
| | **EXCLUSIONS** | 10 | 8 | 8 |
| | **CONDITIONS** | 11 | 9 | 9 |
| | Insurable Interest | | | |
| | Duties After Loss | | | |
| | Loss Settlement | | | |
| | Mortgage Clause | | | |
| **SECTION II** | **COVERAGES** | 14 | 11 | 11 |
| | Personal Liability | | | |
| | Medical Payments to Others | | | |
| | **EXCLUSIONS** | 14 | 11 | 12 |
| | **ADDITIONAL COVERAGES** | 17 | 13 | 14 |
| | Claims Expenses | | | |
| | First Aid Expenses | | | |
| | Damage to Property of Others | | | |
| | Loss Assessment | | | |
| | **CONDITIONS** | 17 | 14 | 15 |
| | Limit of Liability | | | |
| | Duties After Loss | | | |
| | Policy Period | | | |
| **SECTION I** | **CONDITIONS** | 18 | 15 | 16 |
| **SECTION II** | Cancellation | | | |
| | Non-Renewal | | | |

AA 00 06 08 03

HOMEOWNERS
HO 00 03 10 00

# HOMEOWNERS 3 - SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

  **a.** Liability for "bodily injury" or "property damage" arising out of the:

    **(1)** Ownership of such vehicle or craft by an "insured";

    **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

    **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

    **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

    **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

  **b.** For the purpose of this definition:

    **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

    **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

    **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

    **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

  **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  **b.** Any other activity engaged in for money or other compensation, except the following:

    **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

  **a.** You and residents of your household who are:

    **(1)** Your relatives; or

    **(2)** Other persons under the age of 21 and in the care of any person named above;

  **b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

    **(1)** 24 and your relative; or

    **(2)** 21 and in your care or the care of a person described in **a.(1)** above; or

  **c.** Under Section **II**:

    **(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

    **(2)** With respect to a "motor vehicle" to which this policy applies:

2905000000

**(a)** Persons while engaged in your employ or that of any person included in **a.** or **b.** above; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II**, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

  **(1)** Which is shown in the Declarations; or

  **(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

  **(1)** Not owned by an "insured"; and

  **(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

**a.** The one family dwelling where you reside;

**b.** The two, three or four family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section **I** that exceeds the deductible amount shown in the Declarations.

## SECTION I - PROPERTY COVERAGES

### A. Coverage A - Dwelling

1. We cover:

**a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

**b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B - Other Structures

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

2. We do not cover:

**a.** Land, including land on which the other structures are located;

**b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

**c.** Other structures from which any "business" is conducted; or

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

    **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

**3.** The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

### C. Coverage C - Personal Property

**1. Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

**2. Limit For Property At Other Residences**

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    **a.** Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

    **b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

**3. Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

    **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

    **b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

    This limit includes the cost to research, replace or restore the information from the lost or damaged material.

    **c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

    **d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

    **e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

    **f.** $2,500 for loss by theft of firearms and related equipment.

    **g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

    **h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

    **i.** $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

    **j.** $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

    Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j.**

    **k.** $1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

    Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k.**

**4. Property Not Covered**

We do not cover:

    **a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

    **b.** Animals, birds or fish;

    **c.** "Motor vehicles".

      **(1)** This includes:

        **(a)** Their accessories, equipment and parts; or

        **(b)** Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicle". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

2906000000

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

  (2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

   (a) Used solely to service an "insured's" residence; or

   (b) Designed to assist the handicapped;

 **d.** Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

   We do cover model or hobby aircraft not used or designed to carry people or cargo;

 **e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

 **f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

 **g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** - Property Coverages;

 **h.** Property rented or held for rental to others off the "residence premises";

 **i.** "Business" data, including such data stored in:

  (1) Books of account, drawings or other paper records; or

  (2) Computers and related equipment.

   We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

 **j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I**  Property Coverages; or

 **k.** Water or steam.

**D. Coverage D - Loss Of Use**

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

 **1. Additional Living Expense**

   If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

 **2. Fair Rental Value**

   If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

   Payment will be for the shortest time required to repair or replace such premises.

 **3. Civil Authority Prohibits Use**

   If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

 **4. Loss Or Expense Not Covered**

   We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

**E. Additional Coverages**

 **1. Debris Removal**

  **a.** We will pay your reasonable expense for the removal of:

   (1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   (2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

  **b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

   (1) Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

   (2) A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

   provided the tree(s):

   (3) Damage(s) a covered structure; or

   (4) Does not damage a covered structure, but:

Copyright, Insurance Services Office, Inc., 1999

HO 00 03 10 00

(a) Block(s) a driveway on the "residence premises" which prevent(s) a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

2. **Reasonable Repairs**

   a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

   b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

      (1) Increase the limit of liability that applies to the covered property; or

      (2) Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under Section **I - Conditions**.

3. **Trees, Shrubs And Other Plants**

   We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

   a. Fire or Lightning;

   b. Explosion;

   c. Riot or Civil Commotion;

   d. Aircraft;

   e. Vehicles not owned or operated by a resident of the "residence premises";

   f. Vandalism or Malicious Mischief; or

   g. Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge**

   We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed**

   We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

   This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

   a. We will pay up to $500 for:

      (1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

      (2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

      (3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

      (4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

      All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

      This coverage is additional insurance. No deductible applies to this coverage.

   b. We do not cover:

      (1) Use of a credit card, electronic fund transfer card or access device:

         (a) By a resident of your household;

         (b) By a person who has been entrusted with either type of card or access device; or

         (c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

      (2) Loss arising out of "business" use or dishonesty of an "insured".

2907000000

c. If the coverage in **a.** above applies, the following defense provisions also apply:

   (1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   (2) If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

   (3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

7. **Loss Assessment**

   a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

      (1) Earthquake; or

      (2) Land shock waves or tremors before, during or after a volcanic eruption.

      The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

   b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

   c. Paragraph **P.** Policy Period under Section **I** - Conditions does not apply to this coverage.

   This coverage is additional insurance.

8. **Collapse**

   a. With respect to this Additional Coverage:

      (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

      (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

      (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

      (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

      (1) The Perils Insured Against named under Coverage **C**;

      (2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

      (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

      (4) Weight of contents, equipment, animals or people;

      (5) Weight of rain which collects on a roof; or

      (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

   d. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

   a. We cover:

      (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

      (2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

      (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

   b. This coverage does not include loss:

      (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage C, other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage C.

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I - PERILS INSURED AGAINST**

**A. Coverage A - Dwelling And Coverage B - Other Structures**

1. We insure against risk of direct physical loss to property described in Coverages **A** and **B**.

2. We do not insure, however, for loss:

a. Excluded under Section **I** - Exclusions;

b. Involving collapse, except as provided in **E.8.** Collapse under Section **I** - Property Coverages; or

c. Caused by:

(1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(a) Maintain heat in the building; or

(b) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

(2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(a) Fence, pavement, patio or swimming pool;

(b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

2908000000

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C**.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, vermin, rodents, or insects; or

**(h)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, down spout or similar fixtures or equipment.

Section I - Exclusion A.3. Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C - Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section I - Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

         Copyright, Insurance Services Office, Inc., 1999         HO 00 03 10 00

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

   This peril includes self-propelled missiles and space-craft.

6. **Vehicles**

7. **Smoke**

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

9. **Theft**

   a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

   b. This peril does not include loss caused by theft:

   (1) Committed by an "insured";

   (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

   (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

   (4) That occurs off the "residence premises" of:

   (a) Trailers, semitrailers and campers;

   (b) Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

   (c) Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 60 days immediately before the loss.

10. **Falling Objects**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight Of Ice, Snow Or Sleet**

    This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

12. **Accidental Discharge Or Overflow Of Water Or Steam**

    a. This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    b. This peril does not include loss:

    (1) To the system or appliance from which the water or steam escaped;

    (2) Caused by or resulting from freezing except as provided in Peril Insured Against **14. Freezing**;

    (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

    (4) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

    c. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

    d. Section I - Exclusion **A.3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

13. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

    This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing**

    a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

    (1) Maintain heat in the building; or

    (2) Shut off the water supply and drain all systems and appliances of water.

    However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

    b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**15. Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

**16. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I - Property Coverages;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion A.1. applies whether or not the property has been physically damaged.

**2. Earth Movement**

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion A.2. does not apply to loss by theft.

**3. Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in M. Nuclear Hazard Clause under Section I - Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

    Copyright, Insurance Services Office, Inc., 1999    HO 00 03 10 00

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

   a. Planning, zoning, development, surveying, siting;

   b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   c. Materials used in repair, construction, renovation or remodeling; or

   d. Maintenance;

   of part or all of any property whether on or off the "residence premises".

## SECTION I - CONDITIONS

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

**B. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **6.** above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages, stating the amount and cause of loss.

**C. Loss Settlement**

In this Condition **C.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** - Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

2910000000

at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

   b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

      (1) The actual cash value of that part of the building damaged; or

      (2) That proportion of the cost to repair or replace, after application of any deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

   c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

      (1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

      (2) Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

      (3) Underground flues, pipes, wiring and drains.

   d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

      However, if the cost to repair or replace the damage is both:

      (1) Less than 5% of the amount of insurance in this policy on the building; and

      (2) Less than $2,500;

      we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

   e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

**D. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

Copyright, Insurance Services Office, Inc., 1999
HO 00 03 10 00

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

## G. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

## H. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

## I. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;
2. There is an entry of a final judgment; or
3. There is a filing of an appraisal award with us.

## J. Abandonment Of Property

We need not accept any property abandoned by an "insured".

## K. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under Section **I** - Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

## L. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

## M. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

## N. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## O. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72 hour period will be considered as one volcanic eruption.

## P. Policy Period

This policy applies only to loss which occurs during the policy period.

## Q. Concealment Or Fraud

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;

relating to this insurance.

## R. Loss Payable Clause

If the Declarations show a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

2911000000

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II - LIABILITY COVERAGES

### A. Coverage E - Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II - EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

(1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

(2) Rented to others;

(3) Used to carry persons or cargo for a charge; or

(4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service an "insured's" residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

   (1) Being used to assist a handicapped person; or

   (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

   (1) Not owned by an "insured"; or

   (2) Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h.; or

   e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

   (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

   (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

   (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

   (c) Cross public roads at designated points to access other parts of the golfing facility; or

   (2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

### B. "Watercraft Liability"

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

     Copyright, Insurance Services Office, Inc., 1999     HO 00 03 10 00

   **c.** Used to carry persons or cargo for a charge; or

   **d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   **a.** Is stored;

   **b.** Is a sailing vessel, with or without auxiliary power, that is:

     **(1)** Less than 26 feet in overall length; or

     **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

   **c.** Is not a sailing vessel and is powered by:

     **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

       **(a)** 50 horsepower or less and not owned by an "insured"; or

       **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

     **(2)** One or more outboard engines or motors with:

       **(a)** 25 total horsepower or less;

       **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

       **(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

       **(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

         **(i)** You declare them at policy inception; or

         **(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

     The coverages in **(c)** and **(d)** above apply for the policy period.

   Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C.** **"Aircraft Liability"**

This policy does not cover "aircraft liability".

**D.** **"Hovercraft Liability"**

This policy does not cover "hovercraft liability".

**E.** **Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1.** **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   **a.** Is of a different kind, quality or degree than initially expected or intended; or

   **b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2.** **"Business"**

   **a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   **b.** This Exclusion **E.2.** does not apply to:

     **(1)** The rental or holding for rental of an "insured location";

       **(a)** On an occasional basis if used only as a residence;

       **(b)** In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

       **(c)** In part, as an office, school, studio or private garage; and

     **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3.** **Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4.** **"Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

   **a.** Owned by an "insured";

   **b.** Rented to an "insured"; or

   **c.** Rented to others by an "insured";

that is not an "insured location";

**5.** **War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

   **a.** Undeclared war, civil war, insurrection, rebellion or revolution;

   **b.** Warlike act by a military force or military personnel; or

2912000000

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a war-like act even if accidental;

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

F. **Coverage E – Personal Liability**

Coverage **E** does not apply to:

1. Liability:

   a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

   b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

      (1) That directly relate to the ownership, maintenance or use of an "insured location"; or

      (2) Where the liability of others is assumed by you prior to an "occurrence";

      unless excluded in **a.** above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

      (1) Nuclear Energy Liability Insurance Association;

      (2) Mutual Atomic Energy Liability Underwriters;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definitions **5.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or an "insured":

   a. To repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured".

G. **Coverage F – Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

    Copyright, Insurance Services Office, Inc., 1999    HO 00 03 10 00

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

### A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

      This exclusion e.(3) does not apply to a "motor vehicle" that:

      (a) Is designed for recreational use off public roads;

      (b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

### D. Loss Assessment

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II - Exclusions; or

   b. Liability for act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II - Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II - CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

Copyright, Insurance Services Office, Inc., 1999

2913000000

## C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under Section **II** - Additional Coverages, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

## D. Duties Of An Injured Person - Coverage F - Medical Payments To Others

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

## E. Payment Of Claim - Coverage F - Medical Payments To Others

Payment under this coverage is not an admission of liability by an "insured" or us.

## F. Suit Against Us

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

## G. Bankruptcy Of An "Insured"

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

## H. Other Insurance

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## I. Policy Period

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

## J. Concealment Or Fraud

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

# SECTIONS I AND II - CONDITIONS

## A. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

## B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

Copyright, Insurance Services Office, Inc., 1999    HO 00 03 10 00

## C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      (2) If the risk has changed substantially since the policy was issued.

      This can be done by letting you know at least 30 days before the date cancellation takes effect.

   d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

## D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

## E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

## F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** - Additional Coverages.

## G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**FIDELITY NATIONAL INSURANCE COMPANY**
**FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY**
**FIDELITY NATIONAL INDEMNITY INSURANCE COMPANY**

### IMPORTANT NOTICE

### --ANIMAL LIABILITY EXCLUSION--

This insurance does not apply to any occurrence or damages caused by any animal, at any time, at any premises insured hereunder, or caused by, arising out of, or in any way related to any animal owned by or in the care, custody, or control of the insured, or any member of the insured's family or household.

Animal liability coverage is available if a specific premium is charged and a limit is shown for this coverage. However, risks with the following dogs present are unacceptable: Rottweilers, German Shepherds, Pitbulls, Chows, Doberman Pinschers, Akitas, or any dog known by breed to be vicious or any risk where previous dog bite history exists. A mixed breed which includes any of the above is also excluded.

Unless a specific premium has been charged, and a limit is shown on the Declaration page for this coverage, coverage is specifically excluded for Coverage E - Personal Liability and Coverage F - Medical Payments To Others, as well as any Additional Coverages under Section II.

12-01

**THIS ENDORSEMENT RESTRICTS OR ABRIDGES THE RIGHTS OF THE INSURED.
PLEASE READ IT CAREFULLY.**

**SATELLITE DISH EXCLUSION**

We do not provide any coverage under this policy for loss of or damage to satellite antennas, and/or their components.  This includes mounting hardware, unless coverage is purchased and specifically described on your Declaration.

All other terms and conditions remain unchanged.  Coverage limits under Sections I and II are unchanged.

October 2003 Edition, AL                                    ENDORSEMENT A6121 E0101-FNIS

                                                                    2915000000

**THIS ENDORSEMENT RESTRICTS OR ABRIDGES THE RIGHTS OF THE INSURED. PLEASE READ IT CAREFULLY.**

**OCCUPANCY ENDORSEMENT**

It is a condition of this policy that any vacancy or unoccupancy of the described building after the inception date of the policy must be reported to the company.

It is understood and agreed that this Company shall not be liable for loss occurring while a described building, whether intended for occupancy by owner or tenant, is unoccupied beyond a period of sixty consecutive days.

"Vacant" or "Unoccupied" means neither you nor your guest has slept overnight in the dwelling for a period of 30 days.

All other Terms and Conditions of this policy remain unchanged.  Coverage limits under Sections I and II are unchanged.

**THIS ENDORSEMENT RESTRICTS OR ABRIDGES THE RIGHTS OF THE INSURED.
PLEASE READ IT CAREFULLY.**

**ANIMAL LIABILITY EXCLUSION ENDORSEMENT**

Attached to and forming part of Policy Number:  CP6001302  .

In consideration of the premium charged, it is understood and agreed that this insurance does not apply to any occurrence or damages caused by any animal.  This applies at any time and at any premises insured hereunder.  This applies to damages caused by, arising out of, or in any way related to any animal owned by or in the care, custody, or control of the insured, or any member of the insured's family or household.

Unless a specific premium has been charged, and a limit is shown on the Declaration page for this coverage, coverage is specifically excluded for Coverage E - Personal Liability.  Coverage is also excluded for Coverage F - Medical Payments To Others, as well as any Additional Coverages under Section II.

All other terms and conditions of this policy are unchanged.  Section I coverage limits are unchanged.  Section II coverage limits are unchanged.

October 2003 Edition, AL

**ENDORSEMENT A6123 E0101-FNIS**

2916000000

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMIT FOR LOSS TO CAMERAS AND VIDEO RECORDING
## AND PLAYING EQUIPMENT

Section I, Coverages, Subsection C, Personal Property, Special Limits of Liability, Item 14 is added as the following:

$500 for loss of camera or video recording and playing equipment.

The total coverage C limit is unchanged. All other terms and conditions of this policy remain unchanged.

October 2003 Edition, AL                                        ENDORSEMENT A6133 E0101-FNIS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**CONTINUOUS OR REPEATED SEEPAGE**

Section I, Perils Insured Against, Coverage A Dwelling and Coverage B - Other Structures 2.c.6, Item (i.) is added as the following.

9. Continuous or repeated seepage, leakage or spray of water or steam over a period of weeks, months or years from any:
    a. heating, air conditioning, or automatic fire protection sprinkler system;
    b. household appliance;
    c. irrigation, sprinkler system;
    d. plumbing system including from within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

October 2003 Edition, AL                     **ENDORSEMENT A6136 E0101-FNIS00**

2917000000

## MOLD, FUNGUS, ROT DAMAGE - $10,000 LIMIT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The policy is amended as follows:

Under Page 1, **DEFINITIONS**, are added:

1. Water means water (H2O) alone, whether frozen or not or any liquid or sludge which contains water, whether or not combined with other chemicals or impurities. It includes, but is not limited to, snow, sleet, slush, ice, dampness, vapor, condensation, moisture, steam and humidity.

2. Mold means any species of fungi, including but not limited to, mold, yeast, mildew, spores, mold toxins, mycotoxins, mold metabolites, mold antigens, mold allergens, mold-producing antibiotics, or dust or fumes containing any of the foregoing, individually, or in any combination therewith or with another substance. It includes mold, fungi, viral or bacterial matter that reproduces by spores or splitting of cells, whether or not such matter is living.

Under **SECTION I - PERILS INSURED AGAINST, A. Coverage A - Dwelling And Coverage B - Other Structures,** the following language is added under **2.c. (6):**

(i) Any accidental discharge, overflow, continuous or repeated seepage, leakage or dripping of water or steam over a period of days, weeks, months or years from within a plumbing, heating, air conditioning, irrigation, automatic fire protective sprinkler system or from within a household appliance. Plumbing system includes from within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

Under **SECTION I - PERILS INSURED AGAINST, A. COVERAGE A - Dwelling And Coverage B - Other Structures,** item **2.c. (5) (a) and (b)** and **Exception To c.(6)** are deleted in their entirety and replaced by the following:

If loss is caused by water or steam, not otherwise excluded, from a plumbing, heating, air conditioning, irrigation, automatic fire protective sprinkler system or household appliance, we cover loss caused by the water or steam, including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water or steam escaped. Earth movement is never covered under this policy, however caused. We cover ensuing loss caused by fire or explosion.

Acts or omissions of persons can cause, contribute to or aggravate rust, mold, fungus or rot. Also, rust, mold, fungus or rot can occur naturally to cause a loss or combine with acts or omissions of persons to cause a loss. If rust, mold, fungus or rot occurs as the result of a loss, not otherwise excluded, we cover up to $10,000 in total of following items:

1. Damage caused by the rust, mold, fungus or rot;
2. Remediation, which means the reasonable and necessary treatment, removal or disposal, of covered rust, mold fungus or rot, any ensuing repairs resulting from covered remediation or necessary relocation to eliminate the rust, mold, fungus or rot; or
3. Testing of the rust, mold, fungus or rot.

This limit applies to Coverages A, B, C, D and ADDITIONAL COVERAGES limits of liability.

**October 2003 Edition, AL**                    **Page 1 of 2**                    **ENDORSEMENT A6138 E0101-FNISAL**

Under **SECTION I - PERILS INSURED AGAINST, COVERAGE C - PERSONAL PROPERTY,** item **12. Accidental discharge or overflow of water or steam** is deleted in its entirety and replaced by the following:

**12. Sudden and accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:
**a.**  to the system or appliance from which the water or steam escaped;
**b.**  caused by or resulting from freezing, except as provided in the peril **14. Freezing;** of freezing below;
**c.**  to personal property on the "residence premises" when any sudden and accidental discharge or overflow occurs away from the "residence premises";
**d.**  caused by any sudden and accidental discharge or overflow from roof gutters, downspouts, sump-pumps, sump-pump wells, leach fields, seepage pits, septic tanks, drainage channels or any other device used to drain water away from the "residence premises".
In this peril, a plumbing system does not include a sump, sump pump or related equipment.

We never, under any circumstances, cover damage from rust, mold, fungus or rot, no matter how caused.

Under **SECTION I - EXCLUSIONS,** item **3. Water Damage** is deleted in its entirety and replaced by the following:

**Water Damage,** meaning loss caused by:
**(1)**  flood, surface water, irrigation water, rain, waves, tidal water or tidal waves, overflow of lakes, reservoirs, rivers, streams or other bodies of water, release of water impounded by a dam, or spray from any of these, whether driven by wind or not;
**(2)**  water from outside the plumbing system of the "residence premises" which backs up through, or escapes from, sewers or drains; and
**(3)**  water below ground level, from any source, including water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, soil or bedrock, sidewalk, driveway, foundation, wall, basement, floor or swimming pool.

Acts or omissions of persons can cause, contribute to or aggravate Water Damage. Also, Water Damage can occur naturally to cause a loss or combine with acts or omissions of persons to cause a loss. Whenever Water Damage occurs, the Water Damage and any resulting loss is always excluded under this policy, however caused; except we do cover:

a.  Direct physical loss by fire or explosion resulting from Water Damage is covered.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of this policy.

**October 2003 Edition, AL**            **Page 2 of 2**            **ENDORSEMENT A6138 E0101-FNISAL**

2918000000

## SECTION II EARTH MOVEMENT EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The policy is amended as follows:

Under **SECTION II - EXCLUSIONS,** item **F.7.** is added:

**g.** "Bodily injury" or "property damage" caused either directly or indirectly by   "earth movement", with "earth movement" meaning: earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

　**(1)** Fire;

　**(2)** Explosion;

ensues and then we will pay only for the ensuing loss.

October 2003 Edition, AL

ENDORSEMENT A6139 E0101-FNIS00

## AMENDATORY ENDORSEMENT - HO3

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The policy is amended as follows:

Under **DEFINITIONS**, the following is added:

12. "Building" means a structure with walls and a roof.

Under **SECTION I - PROPERTY COVERAGES, A.  Coverage A - Dwelling**, item **2.** is deleted in its entirety and replaced with the following:

2. This coverage does not apply to land, including land supporting the dwelling.  Furthermore, we will not pay for any cost required to replace, rebuild, stabilize or otherwise restore the land or to add any devices or apparatus to stabilize the dwelling.

Under **SECTION I - PROPERTY COVERAGES, B.  Coverage B - Other Structures**, item **1.** is deleted in its entirety and replaced with the following:

1.  We cover other structures on the "residence premises" set apart from the dwelling by clear space.  Other structures include garages, covered carports, covered patios, and covered decks that are not attached to and supported by the dwelling, and driveways, sidewalks, fences, walls, pools built into the ground, spas, uncovered patios, uncovered decks and uncovered carports.  An other structure that only abuts the dwelling or that is connected to the dwelling only by a driveway, sidewalk, deck, patio, fence, wall, utility line or similar construction is not considered to be attached to the dwelling.

Under **SECTION I - PROPERTY COVERAGES, B.  Coverage B - Other Structures**, item **2. a.** is deleted in its entirety and replaced with the following:

2. We do not cover:

a.   Land, including land supporting other structures.  Furthermore, we will not pay for any cost required to replace, rebuild, stabilize or otherwise restore land or to add any devices or apparatus to stabilize other structures.

Under Page 3, **SECTION I - PROPERTY COVERAGES, C.  Coverage C - Personal Property, 3.  Special Limits of Liability**, items **h.** and **i.** are deleted in their entirety and replaced with the following:

h.   $2,500 on property, on the "residence premises", used at any time or in any manner for any "business" purpose, not including electronic data processing equipment or the recording or storage media and software used with that equipment. The limits for such equipment are stated in item **n.** below.

i.   $250 on property, away from the "residence premises" used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.**  This limit does not apply to electronic data processing equipment or the recording or storage media and software used with that equipment.  The limits for such equipment are stated in item **o.** below.

Under Page 3, **SECTION I - PROPERTY COVERAGES, C. Coverage C - Personal Property, 3. Special Limits of Liability**, the following is added:

**l.**  $2,500 on memorabilia, souvenirs, collector items, and similar articles whose age or history contribute to their value, including but not limited to: athletic card collections, posters, signs, books, magazines, figurines, quilts, letters, autographed items, and objects pertaining to famous persons or historical events.

**m.**  $5,000 on theft of imported rugs, carpets, tapestries, wall hangings or similar articles and not to exceed $2,500 for any one rug, carpet, tapestry, wall hanging or similar article, even if such items are considered art work or used as decoration. Imported means made or manufactured in whole or part outside of the United States.

**n.**  $5,000 on electronic data processing equipment and the recording or storage media, and software used with that equipment, including: hardware, such as motherboards, central processing units, hard drives floppy drives, tape drives, CD-Rom drives, DVD-Rom drives, Zip drives, mouse, keyboards, modems, monitors, scanners, printers, floppy discs, other recording or storage media including disks containing computer programs and applications.

**o.**  $1,000 on property identified under **n.** while located away from the "residence premises" or while located away from an "insured" student's school premises. This does not increase the limit of liability for property usually located at an "insured's" residence, other than the "residence premises".

Under **E. Additional Coverages, 1. Debris Removal a. (2)**, the last paragraph is deleted in its entirety and replaced by the following:

> This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense. This additional coverage does not include the cost of disposal, removal, testing or storage of any hazardous or toxic materials.

Under **SECTION I - PERILS INSURED AGAINST, A. Coverage A - Dwelling and Coverage B - Other Structures, 1.,** is deleted in its entirety and replaced by the following:

> **1.** We insure against risk of sudden and accidental direct physical loss to property described in Coverages **A** and **B**.

Under **SECTION I - PERILS INSURED AGAINST, A. Coverage A - Dwelling and Coverage B - Other Structures, c. (3),** is deleted in its entirety and replaced by the following:

> **(3)** Theft in or to a dwelling under construction, alteration or remodeling or of materials or supplies for use in the construction, alteration or remodeling until the dwelling is finished and occupied.

Under **SECTION I - PERILS INSURED AGAINST, A. Coverage A - Dwelling and Coverage B - Other Structures, (6) (f)** is deleted in its entirety and replaced by the following and **(i)** is added by the following:

> **(f)** settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs, ceilings, pools, spas and any other structures of any kind.

> **(I)** growth or pressure from roots of trees, shrubs, bushes or other plants.

Under **SECTION I - PERILS INSURED AGAINST, B. Coverage C - Personal Property**, the first paragraph is deleted in its entirety and replaced by the following:

> We insure for sudden and accidental direct physical loss to property described in Coverage **C** caused by any of the following perils unless the loss is excluded in **SECTION I - EXCLUSIONS.**

Under **SECTION I - CONDITIONS, B. Duties After Loss, 7. c.** is deleted in its entirety and replaced by the following and **d.** is added by the following:

> **c.** Submit to examinations under oath, on video tape is requested, while not in the presence of any other "insured" and sign and return to us a transcript of the same;

> **d.** Give us signed written or tape recorded statements;

Under **SECTION I - CONDITIONS, C. Loss Settlement, 1. d.**, the following is added to the last paragraph:

> Actual cash value means the lesser of repair or replacement cost, exclusive of sales tax, at the time of loss less applicable depreciation for physical deterioration and obsolescence and applicable contractor s profit and overhead.

Under **SECTION I - CONDITIONS, C. Loss Settlement, 2. d.**, the following is added after the last paragraph:

> To collect the amounts payable under these provisions, "you" must complete the repair or replacement and submit the documentation of "your" expenditures to "us" within 2 years of the date of loss.

> Actual cash value as used in **b. (1)** and **d.** means the lesser of repair or replacement cost, exclusive of sales tax, at the time of the loss less applicable depreciation for physical deterioration and obsolescence and applicable contractor's profit and overhead.

> An appraisal award for repair or replacement cost in an amount exceeding the actual cash value of the loss to dwelling or other structures is payable to the extent it exceeds the actual cash value loss only if repair or replacement is completed per the terms of this provision.

Under **SECTION I - CONDITIONS, G. Suit Against Us** is deleted in its entirety and replaced by the following:

> No action can be brought against us unless there has been full compliance with all of the terms under **SECTION I** of this policy and the action is started within one year after the date of loss.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of this policy.

October 2003 Edition, AL                    Page 3 of 3                    **ENDORSEMENT A6140 E0101-FNIS00**

2920000000

# PERSONAL PROPERTY REPLACEMENT COST AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The policy is amended as follows:

Under **Endorsement HO 04 90 10 00, PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT,** the following is added after the last paragraph:

To collect the amounts payable under this provision **for replacement cost benefits where a deduction for depreciation has been applied,** "you" must repair or replace the property and submit the documentation of "your" expenditures to "us" within 1 year of the date of loss.

Actual cash value as used in **B. Ineligible Property, C. Replacement Cost Loss Settlement Condition, 1. a., C. 2.** and **C. 3.** means the lesser of repair or replacement cost, exclusive of sales tax, at the time of loss less applicable depreciation for physical deterioration and obsolescence and applicable contractor's profit and overhead.

An appraisal award for repair or replacement cost in an amount exceeding the actual cash value of the loss to personal property subject to replacement cost loss settlement is payable to the extent it exceeds the actual cash value loss only if repair or replacement is completed per the terms of this provision.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of this policy.

# FIRST COMMUNITY INSURANCE COMPANY
## MULTI-PERIL HOMEOWNERS PROGRAM
### HURRICANE PERCENTAGE DEDUCTIBLE - ALABAMA

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SCHEDULE*

| | |
|---|---|
| Hurricane Deductible Percentage Amount: | SEE DECLARATION PAGE |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

## A. LOSS BY WINDSTORM DURING A HURRICANE

As respects Paragraph B. Hurricane Deductible, coverage for loss caused by the peril of windstorm during a hurricane which occurs anywhere in the state of Alabama, includes loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, hail, sand or dust if the direct force of the windstorm damages the building, causing an opening in a roof or wall and the rain, snow, sleet, hail, sand or dust enters through this opening.

## B. HURRICANE DEDUCTIBLE

We will pay only that part of the total of all loss payable under Section **I** - Property Coverages that exceeds the "hurricane" deductible stated in this endorsement.

The dollar amount of the "hurricane" deductible is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above.

## C. DEFINITIONS

1. "Hurricane" means a storm system that has been declared a hurricane by the National Weather Service. The duration of the hurricane includes the following time period:

   a. Beginning 24 hours before a declared hurricane makes landfall;

   b. While the declared hurricane remains; and

   c. Ending 24 hours after the declared hurricane is no longer present:

   anywhere in the state of Alabama.

2. "Declared" means declared by the National Weather Service.

   The National Weather Service currently uses the Saffir/Simpson Hurricane Scale to categorize "hurricanes". This scale specifies that a "hurricane" is a storm that originates in the tropics and results in either a sustained wind speed of at least 74 miles per hour or a storm surge of at least 4 feet above normal.

## D. LOSS BY WINDSTORM THAT IS NOT A DECLARED HURRICANE

Refer to the policy declarations for the deductible that applies to windstorm loss if the circumstances of the windstorm loss described above do not apply.

All other provisions of this policy apply.

Includes material copyrighted by ISO Properties, Inc., 2000

May 2004 Edition, AL

ENDORSEMENT A6148 E0504-FNIS

2921000000

HOMEOWNERS
HO 01 01 05 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS - ALABAMA

Throughout this policy, the following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of covered property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

## SECTION I - EXCLUSIONS

**8. Intentional Loss** is deleted and replaced by the following:

**8. Intentional Loss**

We do not provide coverage for any loss arising out of any act committed by or at the direction of an "insured" with the intent to cause a loss. However, if you commit an act with the intent to cause a loss, we will provide coverage to an innocent "insured" victim of domestic abuse, as defined in the "Domestic Abuse Insurance Protection Act", to the extent of that person's interest in the property when the damage is proximately related to and in furtherance of domestic abuse.

(This is Exclusion **A.8.** in Form **HO 00 03.**)

## SECTIONS I AND II - CONDITIONS

**F. Subrogation** is deleted and replaced by the following:

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. However, this waiver does not apply if an "insured" is an innocent victim of domestic abuse as defined in the "Domestic Abuse Insurance Protection Act". In this case, we shall be subrogated to the rights of the innocent "insured" claimant to recover for any losses we paid for property damages.

In all other cases, if an "insured" has not waived in writing before a loss all rights of recovery against any person, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 2000

HOMEOWNERS
HO 04 16 10 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

Copyright, Insurance Services Office, Inc.,  1999

2922000000

POLICY NUMBER: CP6001302

HOMEOWNERS
HO 04 20 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A - DWELLING
### FORMS HO 00 02 AND HO 00 03 AND HO 00 05 ONLY

**(APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)**

**SCHEDULE\***

| |
|---|
| Additional Amount Of Insurance:<br><br>___ **50** __% <br><br>The Additional Amount Of Insurance is determined by multiplying the Coverage A limit of liability shown in the Declarations by the percentage amount shown above. |

\*Entry may be left blank if shown elsewhere in this policy for this coverage.

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

A. If you have:

1. Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

   a. The property evaluations we make; and

   b. Any increases in inflation; and

2. Notified us, within 30 days of completion, of any improvements, alterations or additions to the building insured under Coverage A which increase the replacement cost of the building by 5% or more;

The provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged building.

B. If there is a loss to the building insured under Coverage A that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

1. We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

2. Section I - Condition C. Loss Settlement Paragraph 2. is deleted and replaced by Paragraphs 2., 3., and 4. as follows:

   2. The building insured under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

      a. The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

      b. The necessary amount actually spent to repair or replace the damaged building; or

      c. The limit of liability under this policy that applies to the building, plus any additional amount provided by this endorsement.

      If the building is rebuilt at a new premises, the cost described in a. above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

   3. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

   4. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to the building on an actual cash value basis. You may then make claim for any additional liability on a replacement cost basis, provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

HO 04 20 10 00     Copyright, Insurance Services Office, Inc., 1999     **Page 1 of 1**

HOMEOWNERS
HO 04 90 10 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

## A. Eligible Property

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage **C**; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (2) Smoking implements; or

      (3) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

## B. Ineligible Property

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

## C. Replacement Cost Loss Settlement Condition

The following loss settlement condition applies to all property described in **A.** above:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage **C**, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in **A.2.a. - f.** above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

---

HO 04 90 10 00          Copyright, Insurance Services Office, Inc., 1999          Page 1 of 1

HOMEOWNERS
HO 04 95 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER BACK UP AND
# SUMP DISCHARGE OR OVERFLOW

### A. Coverage

We insure, up to $5,000, for direct physical loss, not caused by the negligence of an "insured", to property covered under Section I caused by water, or water-borne material, which:

1. Backs up through sewers or drains; or

2. Overflows or is discharged from a:

    a. Sump, sump pump; or

    b. Related equipment;

    even if such overflow or discharge results from mechanical breakdown. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not increase the limits of liability for Coverages A, B, C or D stated in the Declarations.

### B. Section I - Perils Insured Against

With respect to the coverage described in A. above, Paragraph:

A.2.c.(6)(b) in Form HO 00 03;

A.2.e.(2) in Form HO 00 05;

2.j.(2) in Endorsement HO 05 24;

3.j.(2) in Endorsement HO 17 31; and

2.c.(6)(b) in Endorsement HO 17 32;

is deleted and replaced by the following:

Latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

### C. Special Deductible

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement.

We will pay only that part of the total of all loss payable under Section I that exceeds $250. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage D - Loss of Use.

### D. Exclusion

The Water Damage exclusion is deleted and replaced by the following:

Water Damage, meaning:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

b. Water, or water-borne material, which:

    (1) Backs up through sewers or drains; or

    (2) Overflows or is discharged from a sump, sump pump or related equipment;

    as a direct or indirect result of flood; or

c. Water, or water-borne material, below the surface of the ground, including water which:

    (1) Exerts pressure on; or

    (2) Seeps or leaks through;

    a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1999

**HOMEOWNERS**
**HO 04 96 10 00**

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

# <u>NO</u> SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
# <u>LIMITED</u> SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

**A.** "Business", as defined in the policy, means:

    **1.** A trade, profession or occupation engaged in on a full-time, part-time, or occasional basis; or

    **2.** Any other activity engaged in for money or other compensation, except the following:

        **a.** One or more activities:

           **(1)** Not described in **b.** through **d.** below; and

           **(2)** For which no "insured" receives more than $2000 in total compensation for the 12 months before the beginning of the policy period;

        **b.** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

        **c.** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

        **d.** The rendering of home day care services to a relative of an "insured".

**B.** If an "insured" regularly provides home day care services to a person or persons other than "insureds" as their trade, profession or occupation, that service is a "business".

**C.** If home day care service is not a given "insured's" trade, profession or occupation but is an activity:

    **1.** That an "insured" engages in for money or other compensation; and

    **2.** From which an "insured" receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

the home day care service and other activity will be considered a "business".

**D.** With respect to **C.** above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

    **1.** Described in **A.2.** above, and

    **2.** Engaged in for money by a single "insured";

may be considered a "business" if the $2000 threshold is exceeded.

**E.** With respect to **A.** through **D.** above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

    **1.** Does not provide:

        **a.** Section **II** coverages. This is because a "business" of an "insured" is excluded under **E.2.** of Section **II** - Exclusions;

        **b.** Coverage, under Section **I**, for other structures from which any "business" is conducted; and

    **2.** Limits Section **I** coverage, under Coverage C - Special Limits of Liability, for "business" property:

        **a.** On the "residence premises" for the home day care "business" to $2,500. This is because Category **h.** (e. in Form **HO 00 08**) imposes that limit on "business" property on the "residence premises";

        **b.** Away from the "residence premises" for the home day care "business" to $500. This is because Category **i.** (f. in Form **HO 00 08**) imposes that limit on "business" property away from the "residence premises". Category **i.** does not apply to property described in Categories **j.** and **k.** (g. and **h.** respectively in Form **HO 00 08**).

HO 04 96 10 00          Copyright, Insurance Services Office, Inc., 1999          **Page 1 of 1**

2924000000

HOMEOWNERS
HO 05 30 10 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNCTIONAL REPLACEMENT COST LOSS SETTLEMENT
## FORMS HO 00 02, HO 00 03 AND HO 00 05 ONLY

**DEFINITIONS**

The following definition is added when this endorsement is attached to the policy:

"Functional replacement cost" means the amount which it would cost to repair or replace the damaged building with less costly common construction materials and methods which are functionally equivalent to obsolete, antique or custom construction materials and methods used in the original construction of the building.

**SECTION I - CONDITIONS**

**C. Loss Settlement**

Paragraph **2.** is deleted and replaced by the following:

**2.** Buildings covered under Coverage **A** or **B**:

**a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the "functional replacement cost" of the building immediately before the loss and you contract for repair or replacement of the damaged building for the same use, within 180 days of the damage unless we and you otherwise agree, we will pay, after application of any deductible, the lesser of the following amounts:

**(1)** The limit of liability under this policy that applies to the building; or

**(2)** The necessary amount actually spent to repair or replace the damaged building on a "functional replacement cost" basis.

**b.** If you do not make claim under **2.a.** above, we will pay, after application of any deductible, the least of the following amounts:

**(1)** The limit of liability under this policy that applies to the building;

**(2)** The actual cash value of the damaged part of the building; or

**(3)** The amount which it would cost to repair or replace the damaged building on a "functional replacement cost" basis.

**c.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the "functional replacement cost" of the building immediately before the loss, we will pay that proportion of the cost to repair or replace that part of the building damaged:

**(1)** After application of any deductible; and

**(2)** Without deduction for depreciation;

which the total amount of insurance in this policy on the damaged building bears to 80% of the "functional replacement cost" of the building, but not more than the limit of liability under this policy that applies to the building.

**d.** To determine the amount of insurance required to equal 80% of the "functional replacement cost" of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**e.** If the actual cash value of the damage is less than the "functional replacement cost" then:

**(1)** We will pay no more than the actual cash value of the damage until replacement is complete. Once replacement is complete, we will settle the loss according to the provisions of **2.a.** and **c.** above.

However, if the cost to functionally repair the damage is both:

**(a)** Less than 5% of the amount of insurance in this policy on the building; and

**(b)** Less than $2,500;

we will settle the loss according to the provisions of **2.a.** and **c.** above whether or not replacement is complete.

**(2)** You may disregard the "functional replacement cost" loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis.

You may then make claim for any additional liability according to the provisions of this Condition C. Loss Settlement, provided you notify us of your intent to do so within 180 days of the date of loss.

All other provisions of this policy apply.

# PERSONAL THEFT
## SWORN PROOF OF LOSS

Be Sure To
Complete
Both Forms

Policy No: _CPb-1302_

Full Name of Insured: _Comoletha D. Jamison-Means_

Permanent Residence Address: _2265 E. Aberdeen Dr._

Do you have other insurance which applies to this loss? _NO_

Name and address of company_____

_____

_____

| |
|---|
| Claim No: <u>349499-202</u> |
| Check No: _____ |
| Date Paid: _____ |
| Amount: $_____ |

Amount for which claim is made under Fidelity National Property and Casualty Company policy $ _41,818.63_   _09/07/07_
(Itemize on inventory sheet)

Amount claimed from other company_____ _N/A_

WHEN LOSS OCCURRED: DATE _Feb. 19, 2007_ HOUR _(unknown) approx. 1:00 am_

WHERE LOSS OCCURRED: LOCATION _2265 East Aberdeen Drive_

_Montgomery, Alabama 36116_

If loss sustained by other than named insured, who sustained loss? _N/A_

Relationship to insured _____

Does person reside permanently with insured? _____ Does person pay room and board? _____

Does this person own the articles for which claim is made in this proof of loss? _____

If not, who is the owner? _____

Date and time reported to police _Feb. 19, 2007   1:00 am_

Address of police station _320 N. Ripley St. Mont., AL 36104_

Type of loss:  ☒ Burglary or theft   ☐ Robbery or Holdup   ☐ Fraud   ☐ Counterfeit   ☐ Water Damage
☐ Check Forgery   ☐ Credit Card Forgery   ☐ Mysterious Disappearance   ☐ Fire Damage

STATE BRIEFLY HOW LOSS OCCURRED _The glass on back door was broken after destroying the screen part._

**IF LOST AT RESIDENCE**

Is any business conducted in or on the residence premises? ☒ YES ☐ NO  What type? _gift baskets_

The loss was occasioned by thieves entering the premises (with/without) force or violence as evidenced by _the back door being damaged._

_I_ hereby declare that _I_ have not received indemnity for this loss except as follows:_____
I / We                                    I / We

3/2/2007

# EXHIBIT B

EXHIBIT
_4_

_I_ hereby declare that said loss did not originate by any act of design on the part of the insured: nothing has been done
I / We

by or with the privity or consent of the insured to violate the conditions of the policy or render it void. No articles are mentioned herein or in annexed schedules but such as were destroyed, damaged or lost at the time of said loss; no property saved or returned has been concealed, and no attempt to deceive the said company, as to the extent of said loss has in any manner been made.

Nothing material to my knowledge of the facts of the loss for which claim is made has been suppressed, withheld or misrepresented herein. Any other information that may be required will be furnished on demand and be considered a part of these proofs. It is expressly understood and agreed that in furnishing this proof of loss form to the Insured or the making up of any proofs by any agents or adjuster of the Company, the Company does not waive any of its rights under the said policy.

## FRAUD PROMPT

_I_ have carefully read the foregoing statement and warrant it to be full, complete and true.
I / We

EVERY QUESTION MUST BE

ANSWERED UNDER OATH

_____
insured

Subscribed and sworn to before me this __12__ day of __March__ , 20 _07_.

_____
Notary Public

3/2/2007

Query Summary

Page 1 of 1

**07-30002** Comoletha D Jamison-Means
**Case type:** bk **Chapter:** 13 **Asset:** Yes **Vol:** v **Judge:** Dwight H. Williams Jr.
**Date filed:** 01/02/2007 **Plan confirmed:** 04/02/2007 **Date of last filing:** 04/08/2007

# Case Summary

| | | | |
|---|---|---|---|
| **Office:** | Montgomery | **Filed:** | 01/02/2007 |
| **County:** | Montgomery | **Terminated:** | |
| **Fee:** | Paid | **Discharged:** | |
| **Origin:** | 0 | **Reopened:** | |
| **Previous Term:** | | **Converted:** | |
| **Disposition:** | | **Dismissed:** | |
| **Joint:** | n | **Confirmation Hearing:** | |

**Pending Status:** Awaiting Confirmation Hearing
**Flags:** DebtEd, Disch522
**Trustee:** Bankruptcy Administrator

| | | | |
|---|---|---|---|
| | **City:** Montgomery | **Phone:** | **Email:** ba@almb.uscourts.gov |
| **Trustee:** Curtis C. Reding | **City:** Montgomery | **Phone:** 334 262-8371 | **Email:** trustees_office@ch13mdal.com |

**Party 1:** Comoletha D Jamison-Means  (xxx-xx-7798)
(Debtor)

**Atty:** Debora Palmer

| | |
|---|---|
| **Represents party 1:** Debtor | **Phone:** 334-262-0400 **Fax:**   334-262-0464 **Email:** debrapalmer@bellsouth.net |

**Location of Case File(s):**
**Volume:** CS1
The case file may be available.

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/10/2007 17:23:36 | | |
| **PACER Login:** cc0972 | **Client Code:** | |
| **Description:** Case Summary | **Search Criteria:** | 07-30002 |
| **Billable Pages:** 1 | **Cost:** | 0.08 |

https://ecf.almb.uscourts.gov/cgi-bin/qrySummary.pl?133129

# EXHIBIT D

5/10/2007

IN RE <u>Jamison-Means, Comoletha D</u>                                Case No. _____
                          Debtor(s)

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H" for Husband, "W" for Wife, "J" for Joint, or "C" for Community in the column labeled "HWJC." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child. Simply state "a minor child."

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | H W J C | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | | **Cash** | J | 40.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Checking Account @ AmSouth** | J | 20.00 |
| | | **Savings Account @ AmSouth** | J | 63.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | | **Alabama Power** | J | 100.00 |
| | | **Water Works and Sewer Board** | J | 150.00 |
| 4. Household goods and furnishings, include audio, video, and computer equipment. | | **Kitchenette w/4 Chairs; China Cabinet; Dining Room Table w/ 6 Chairs; Sofa, Loveseat, Curio Cabinet, HP Computer, End Tables, Stereo DVD Player, 2 Queen Bedroom Suites, 2 Bunkbed Sets, dressers, 2 TVs, Microwave, Washer & Dryer.** | W | 1,500.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **CDs, DVDs, Wall Decor** | W | 200.00 |
| 6. Wearing apparel. | | **Clothing** | W | 200.00 |
| 7. Furs and jewelry. | | **Bracelet, Necklace, Wedding Rings** | W | 300.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | | | |
| 10. Annuities. Itemize and name each issue. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(3). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | **100% interest in Vet's Specialties** | W | 1.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |

SCHEDULE B - PERSONAL PROPERTY

© 1993-2006 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

IN RE <u>Jamison-Means, Comoletha D</u>                                        Case No. _____
                                          Debtor(s)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | H W J C | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 16. Accounts receivable. | | Judgment in Small Claims Court: SM-2003-3647 Comoletha Jamison v. Jobie Milton | W | 2,138.00 |
| 17. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | | Michael Belser, Sr. 73 South Haardt Drive Montgomery, Alabama 36105 | W | 163.00 |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) in customer lists or similar compilations provided to the debtor - by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1996 Plymouth Voyager Ralle | J | 2,750.00 |
| | | 2003 Ford Explorer | W | 13,425.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | FAX, Printer, Paper , Pens | W | 150.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | TOTAL | 21,200.00 |

_____ 0 continuation sheets attached

SCHEDULE B - PERSONAL PROPERTY

(Include amounts from any continuation sheets attached.)
Report total also on Summary of Schedules.)

© 1993-2006 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

| DESCRIPTION OF ITEM CLAIMED INCLUDING MAKE AND MODEL NO. | DATE OF PURCHASE | PLACE OF PURCHASE | PRICE AT TIME OF PURCHASE | METHOD OF PAYMENT | ROOM WHERE ITEM WAS LOCATED | COST TO REPLACE |
|---|---|---|---|---|---|---|
| 1 Dwabrand 19" color TV DTV 1307 | 2006 | Wal-mart | $69.00 | C | office | $94.90 |
| 2 HP Computer Pavilion a305w Tower | Aug 2005 | " | $829.91 | C | office | $1179.98 |
| 3 " " monitor | Aug 2005 | " | package | | office | package |
| 4 " " printer | Aug 2005 | " | | | office | |
| 5 Barbie Doll Collections | Nov, Dec 2006 | Wal-mart | $658.32 | C | Living Rm | $658.32 |
| 6 Display Cabinets | May 2006 | yard sale Business closing | $200.00 | C | office | $600.00 |
| 7 Broken / Demaged Candles | Nov 2006- Jan 2007 | Wal-mart Home Interior Target | $384.00 | C | office | $384.00 |
| 8 Broken Parfume | Nov 2006 Jan 2007 Feb 2007 | Mary Kay Bath and Body Victoria Secent | $2100.00 | C | office | $2348.00 |
| 9 What - Nots | Dec 2006 - Feb 2007 | Wal-mart Dollar Tree | $27.50 | C | office | $27.50 |
| 10 Wine Glasses | Jan 2007 | Dollar General | $16.50 | C | office | $16.50 |
| 11 Arbor Mist Wine | Jan 2007 Feb 2007 | Winn Dixie | $60.00 | C | office | $60.00 |
| 12 Zenith DVD player DVD 2201 | May 2001 | Wal-mart | not sure | C | office | $98.87 |
| 13 Philips TV/VCR Combo | May 2001 | Wal-mart or Circuit City | $160.00 | C | Living Rm | $179.83 |
| 14 Philips 27"TV 27PT9007D/37 | June 2001 | Wal-mart or Circuit City | $299.00 | C | Living Rm | $348.26 |
| 15 | | | | | | |

Jamison - Means, Conoletha
NAME

Conoletha R. Means
SIGNATURE

19 Feb 2007
DOL

NOTARY [illegible] STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 16, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

# EXHIBIT E

| DESCRIPTION OF ITEM CLAIMED INCLUDING MAKE AND MODEL NO. | DATE OF PURCHASE | PLACE OF PURCHASE | PRICE AT TIME OF PURCHASE | METHOD OF PAYMENT | ROOM WHERE ITEM WAS LOCATED | COST TO REPLACE |
|---|---|---|---|---|---|---|
| 1 RCA 61" color TV | 2005 | Aaron's Rental | $3729.96 | C | Den | $3729.96 |
| 2 Philips DVD/VCR combo | not sure | Wal mart | *not sure | C | Den | $139.88 |
| 3 Toshiba Home Theather SD-KT50SU | June 2006 | Sam's or Wal-mart | $379.00 | C | Den | $379.00 |
| 4 HP photosmart kit C5140 | Dec 2006 | Wal-mart | $198.93 | C | Den | $198.93 |
| 5 JVC digital camcorder GZ-MG21 | Nov 2006 | Wal-mart | $499.96 | C | Den | $499.96 |
| 6 Kodak digital camera kit C743 | July 2006 | Wal-mart | $298.76 | C | Den | $298.76 |
| 7 Children movies varies (DVD/VHS) | | Wal-mart Circuit City Best Buy | $5490.00 | C | Den | $5490.00 |
| 8 adult/family movies | started collecting) 2000-Present | " | $3742.50 | C | Den | $3742.50 |
| 9 Law-n-order Collection | | " | $137.22 | C | Den | $137.22 |
| 10 CSI collection | | " | $206.58 | C | Den | $206.58 |
| 11 Jefferson, Sanford and Son, Good Times Black Collections | | Wal-mart Circuit City Best Buy | $85.00 | C | Den | $85.00 |
| 12 Orion 13" TV | Sept 2005 | Wal mart | $99.78 | C | Kitchen $99.78 om room | $99.78 |
| 13 Gateway Computer | March 2000 | Gateway | $1656.00 | C | Den | $1656.00 |
| 14 Playstation Games | 2005 - 2007 | Wal-mart kmart Circuit City | $2500.00 | C | Den | $2500.00 |
| 15 | | | | | | |

Jamison-Means, Comoletha
NAME

Comoletha S. Means
SIGNATURE

19 Feb 2007
DOL

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: JULY 16, 2007
BONDED THRU NOTARY PUBLIC UNDERWRITERS

| DESCRIPTION OF ITEM CLAIMED INCLUDING MAKE AND MODEL NO. | DATE OF PURCHASE | PLACE OF PURCHASE | PRICE AT TIME OF PURCHASE | METHOD OF PAYMENT | ROOM WHERE ITEM WAS LOCATED | COST TO REPLACE |
|---|---|---|---|---|---|---|
| 1 Zenith 32" TV | 2005 | Wal·mart | $319.00 | C | 1st Bedroom | $458.70 |
| 2 Sharp VCR | 2005 | Wal·mart or Circuit City | $49.87 | C | 1st Bedroom | $49.87 |
| 3 Symphonic DVD player | 2005 | Wal·mart | $34.98 | C | 1st Bedroom | $34.98 |
| 4 Sony 5-disc stereo | Oct 2006 | Walmart | $189.37 | C | 1st Bedroom | $189.37 |
| 5 RCA 19" TV | 2005 | Wal·mart or Circuit City | $99.00 | C | 2nd Bedroom | $112.87 |
| 6 Sharp VCR | 2005 | Circuit City (?) | $49.87 | C | 2nd Bedroom | $49.87 |
| 7 Symphonic DVD | 2005 | Wal·mart | $34.98 | C | 2nd Bedroom | $34.98 |
| 8 Sony 3 disc stereo | Oct 2006 | Walmart | $98.72 | C | 2nd Bedroom | $98.72 |
| 9 RCA 27" color TV | Dec 2005 | Wal·mart or Circuit City | $299.00 | C | 3rd Bedroom | $348.00 |
| 10 Panasonic VCR PV~V4021/PV~V4521 | May 2001 | Circuit City | $70.00 | C | 3rd Bedroom | $70.00 |
| 11 Playstation One | march 2005 | not sure | $100.00 | C | 2nd Bedroom | $150.00 |
| 12 Playstation two | July 2006 | Wal·mart | $200.00 | C | 1st Bedroom | $200.00 |
| 13 White-westinghouse 5-disc stereo WMC-13216 | not sure | Kmart or Wal·mart | $80.00 | C | 3rd Bedroom | $80.00 |
| 14 JVC DVD player XV-N850B | Dec 1999 | Circuit City | not sure | C | 3rd Bedroom | $219.88 |
| 15 | | | | | | |

Jamison-Means Conioletha
NAME

Conioletha R-Means
SIGNATURE

19 Feb 2007
DOL

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES July 19, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

| DESCRIPTION OF ITEM CLAIMED INCLUDING MAKE AND MODEL NO. | DATE OF PURCHASE | PLACE OF PURCHASE | PRICE AT TIME OF PURCHASE | METHOD OF PAYMENT | ROOM WHERE ITEM WAS LOCATED | COST TO REPLACE |
|---|---|---|---|---|---|---|
| 1 RCA 61" Color TV | Jan 2006 | Rent Way | $3729.96 | C | 4th Bedroom | $3729.96 |
| 2 JVC Home Theather System TH-C60 | Nov 2006 | Walmart | $448.00 | C | 4th Bedroom | $448.00 |
| 3 Compaq computer (tower) | Sept 2006 | | $319.97 | C | 4th Bedroom | $319.97 |
| 4 Compaq computer (monitor) | Sept 2006 | | | | | |
| 5 Compaq computer (printer) | Sept 2006 | | | | | |
| 6 Toshiba Satellite Labtop Computer | March 2005 | Circuit City & Sam's | $1200.00 | C | 4th Bedroom | $1299.00 |
| 7 Kodak digital camera CS33 | Dec 14, 2006 | CVS | $110.00 | C | 4th Bedroom | $110.00 |
| 8 White gold wedding set w/diamonds | May 2005 | Walmart | $823.00 | C | 4th Bedroom | $1009.58 |
| 9 (3) diamond cluster rings | Dec 2005 Feb 2006 | Quick Pawn JC Penny | $450.00 | C | 4th Bedroom | $450.00 |
| 10 (3) Tennis Braclets | Sept 2005 Nov 2005 | Quick Pawn | $400.00 | C | 4th Bedroom | $400.00 |
| 11 Tennis Braclets w/ children birthstones | May 2005 | Quick Pawn | $175.00 | C | 4th Bedroom | $175.00 |
| 12 Heirbone Necklace | 2004 | Montgomery mall | $150.00 | C | 4th Bedroom | $150.00 |
| 13 I Love you necklace/braclet | Feb 2006 | Montgomery mall | $180.00 | C | 4th Bedroom | $180.00 |
| 14 (2) Dome Face Gold Fossil watches (His and Her) | Dec 2004 | Gallery Mall (Birmingham, Al) | $375.00 | C | 4th Bedroom | $375.00 |
| 15 (2) class rings | May 1994 | Order Through Lanier High School | not sure | C | 4th Bedroom | $500.00 |

Jamison-Means, Comoletha
NAME

Comoletha Jr - Mea
SIGNATURE

19 Feb 2007
DOL

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: July 18, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

| DESCRIPTION OF ITEM CLAIMED INCLUDING MAKE AND MODEL NO. | DATE OF PURCHASE | PLACE OF PURCHASE | PRICE AT TIME OF PURCHASE | METHOD OF PAYMENT | ROOM WHERE ITEM WAS LOCATED | COST TO REPLACE |
|---|---|---|---|---|---|---|
| 1 Afrocentrix Adult Movies | Oct 2006 — present | varies shops & mail orders | $ 1922.²⁵ | C | 4th Bedroom | $ 1922.²⁵ |
| 2 Cash box | Jan Feb 2007 | | $ 5093.⁵⁵ | | 4th Bedroom | $ 3795.⁰⁰ |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |

Jamison-Means, Comoletha
NAME

 Comoletha 😊-Means 19 Feb 200
SIGNATURE          DOL

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES JULY 10, 2010
BONDED THRU NOTARY PUBLIC UNDERWRITERS

(Official Form 1) (9/01)

| FORM B1 | United States Bankruptcy Court<br>Middle District of Alabama | Voluntary Petition |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Jamison, Comoletha D'elafaye** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**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** | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**2021 Tullis Drive<br>Montgomery, AL 36111** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:    **Montgomery** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (If different from street address):<br>**P.O. Box 11144<br>Montgomery, AL 36111** | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

**Information Regarding the Debtor (Check the Applicable Boxes)**

**Venue** (Check any applicable box)
- ☐ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | | **Chapter or Section of Bankruptcy Code Under Which<br>the Petition is Filed** (Check one box) |
|---|---|---|
| ■ Individual(s)<br>☐ Corporation<br>☐ Partnership<br>☐ Other_____ | ☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker | ■ Chapter 7        ☐ Chapter 11        ☐ Chapter 13<br>☐ Chapter 9        ☐ Chapter 12<br>☐ Sec. 304 - Case ancillary to foreign proceeding |

| **Nature of Debts** (Check one box) | **Filing Fee** (Check one box) |
|---|---|
| ■ Consumer/Non-Business        ☐ Business | ■ Full Filing Fee attached<br>☐ Filing Fee to be paid in installments (Applicable to individuals only.)<br>Must attach signed application for the court's consideration<br>certifying that the debtor is unable to pay fee except in installments.<br>Rule 1006(b). See Official Form No. 3. |
| **Chapter 11 Small Business** (Check all boxes that apply)<br>☐ Debtor is a small business as defined in 11 U.S.C. § 101<br>☐ Debtor is and elects to be considered a small business under<br>11 U.S.C. § 1121(e) (Optional) | |

| **Statistical/Administrative Information** (Estimates only) | | | | | | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|---|---|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there<br>will be no funds available for distribution to unsecured creditors. | | | | | | |

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over | |
|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |

| Estimated Assets | $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Debts | $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|---|
| | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

*(court stamp: U.S. BANKRUPTCY COURT MONTGOMERY, ALABAMA   03 MAY 16  AM 11:15)*

*200.ºº LD*

# EXHIBIT F

(Official Form 1) (9/01)

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Jamison, Comoletha D'elafaye** | FORM B1. Page 2 |
|---|---|---|

### Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet)

| Location<br>Where Filed:  **none** | Case Number: | Date Filed: |
|---|---|---|

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X *Comoletha JW*
Signature of Debtor **Comoletha D'elafaye Jamison**

X
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

*5/15/03*
Date

X *Trina S. Williams*
Signature of Attorney for Debtor(s)

**Trina S. Williams SAN 046**
Printed Name of Attorney for Debtor(s)

**Toles & Williams, LLP**
Firm Name

**400 S. Union Street, Ste.270**
**Montgomery, AL  36104**
Address

**334-832-9915  Fax: 334-832-9917**

*5/15/03*
Telephone Number
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.
The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X
Signature of Authorized Individual

Printed Name of Authorized Individual

Title of Authorized Individual

Date

**Exhibit A**
(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X *Trina S. Williams*  *5/15/03*
Signature of Attorney for Debtor(s)    Date
**Trina S. Williams SAN 046**

**Exhibit C**
Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

Printed Name of Bankruptcy Petition Preparer

Social Security Number

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X
Signature of Bankruptcy Petition Preparer

Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.

In re    **Comoletha D'elafaye Jamison**                                    Case No. _____

_____
                        Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Checking - Max Federal Credit Union** **Savings - Max Federal Credit Union** **Savings - AmSouth** | - | 35.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | **Furniture, TVS, Washer & Dryer, Computer** | - | 1,500.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **Books** | - | 50.00 |
| 6. Wearing apparel. | | **Women & Children Clothing** | - | 1,500.00 |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

Sub-Total >        3,085.00
(Total of this page)

___2___ continuation sheets attached to the Schedule of Personal Property

In re  **Comoletha D'elafaye Jamison**                                        Case No._____

_____
                              Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | | **Child support - Court Ordered but not received on regular basis** | - | 162.00 |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >                        162.00
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

In re  **Comoletha D'elafaye Jamison**                                      Case No. _____

                                                    Debtor

# SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1986 Astro Van | - | 1,500.00 |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | | Dogs & Cats | - | 100.00 |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. | X | | | |

|  | | |
|---|---|---|
| Sub-Total > | 1,600.00 |
| (Total of this page) | |
| Total > | 4,847.00 |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

CORRECTED

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000538
Cashier ID: brobinso
Transaction Date: 09/26/2007
Payer Name: CLAYTON AND CLAXTON LLC
------------------------------------
CIVIL FILING FEE
  For: WILLIAM P CLAXTON
  Case/Party: D-ALM-2-07-CV-000860-001
  Amount:        $350.00
PRO HOC VICE
  For: WILLIAM P CLAXTON
  Case/Party: D-ALM-A-TT-YF-EEFUND-001
  Amount:        $20.00
------------------------------------
CHECK
  Check/Money Order Num: 1722
  Amt Tendered:  $350.00
CHECK
  Check/Money Order Num: 1723
  Amt Tendered:  $20.00
------------------------------------
Total Due:      $370.00
Total Tendered: $370.00
Change Amt:     $0.00

CIVIL FEE - FIDELITY NTL INS CO V.
JAMISON-MEANS


PHV- WILLIAM P CLAXTON


180 INTERSTATE PKWY

STE 115
ATLANTA GA 30339